**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**ROSE SANSONE**                                                                                    **PLAINTIFF**

**VS.**                                                        **CIVIL ACTION NO.: 3:04-CV-886BN**

**LIBERTY MUTUAL INSURANCE COMPANY AND**
**MCRAE'S, INC.**                                                                                **DEFENDANTS**

**OPINION AND ORDER**

This cause is before the Court on the Motion for Summary Judgment of Defendant Liberty Mutual Insurance Company. Having considered the Motion, Response, Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken and should be granted.

**I. Factual Background and Procedural History**

This suit arises out of an injury Plaintiff Rose Sansone suffered on May 16, 2000, while working in the course and scope of her employment with McRae's, a department store. After sustaining the injury to her wrist, Plaintiff filed a claim with McRae's worker's compensation insurer, Defendant Liberty Mutual Insurance Company ("Defendant").[1] Defendant accepted Plaintiff's claim and began providing treatment to Plaintiff. Plaintiff subsequently underwent two separate surgical procedures, both of which were paid for by Defendant. The underlying dispute in this case concerns the

---

[1] McRae's was originally named as a Defendant to this suit, but was dismissed pursuant to the April 5, 2005, Opinion and Order of the Court.

alleged bad faith refusal of Defendant to pay for a third surgical procedure for Plaintiff.

On December 5, 2000, Plaintiff's primary treating physician, Dr. William Geissler, performed an arthroscopic surgery on Plaintiff's wrist to repair a partially torn ligament (" first surgery"). Dr. Geissler examined Plaintiff on several occasions after the first surgery.[2] Although Plaintiff continued to experience pain after the first surgery, Dr. Geissler opined on three separate occasions that the risk associated with additional surgical procedures, including a carpectomy, outweighed the benefits. See Exhibit "D" to Defendant's Motion for Summary Judgment, pp. 5-6, 12. However, Plaintiff's pain did not subside and on April 11, 2002, Dr. Geissler performed a second surgery("second surgery").[3] Geissler examined Plaintiff several times after the second surgery and on December 17, 2002, Geissler provided Defendant with a written evaluation of Plaintiff's condition. He informed Defendant that Plaintiff had reached maximum medical improvement, that she had a six percent permanent partial impairment and that "[n]o further treatment is required or

---

[2] Between the first and second surgeries, Defendant had Dr. Jose L. Ferrer evaluate Plaintiff to provide a second opinion. Dr. Ferrer concurred with Geissler's observations and recommended treatments.

[3] The second operation was described as an "anterior and posterior interosseus nerve nuerectomy, transfer extensor carpi radialis longus to scaphoid." Exhibit "D" to Defendant's Motion for Summary Judgment, p. 13.

recommended for Ms. Sansome." Exhibit "G" to Defendant's Motion for Summary Judgment. Geissler also released Plaintiff to reenter the work force.

Plaintiff began work in March 2003 with a new employer, but after several days, suffered swelling in her hand. Plaintiff was subsequently evaluated by Dr. Jose L. Ferrer who referred Plaintiff back to Geissler for further surgery.[4] On June 30, 2003, Plaintiff was examined by Geissler who at that time recommended that Plaintiff have a carpectomy ("third surgery"). On July 2, 2003, Plaintiff's attorney, David Sessums, wrote a letter to Defendant's attorney in the matter, Britt Virden, to inform him that Plaintiff's third surgery was scheduled for August 5, 2003. On July 9, 2003, Virden responded to Sessums by asking him to forward medical records regarding the proposed third surgery. Defendant took no action during this time and on August 5, 2003, the day the surgery was originally scheduled, Sessums again wrote Virden informing him that the surgery had been rescheduled for August 14, 2003. The letter also warned that Plaintiff would consider it "bad faith" if Defendant did not approve the surgery before the scheduled date.

---

[4] In his deposition, Dr. Ferrer stated that he recommended that Plaintiff have a fusion, but that he did not recommend a carpectomy at that time. Exhibit "E" to Defendant's Motion for Summary Judgment.

Virden responded to Sessums' August 5, 2003, correspondence on August 11, 2005, and expressed Defendant's desire to scheduled an independent medical examination ("IME"). Plaintiff agreed to the IME and Defendant subsequently scheduled an IME with Dr. Jeff Almand for August 20, 2003. However, after learning that Dr. Almand was the physician chosen by Defendant to conduct the IME, Plaintiff refused to submit. In light of Plaintiff's refusal to submit to the IME, Defendant filed a motion with the Mississippi's Workers' Compensation Commission ("MWCC") requesting approval of the IME. The MWCC granted Defendant's motion and ordered Plaintiff to submit to the IME by Dr. Almand. Dr. Almand examined Plaintiff on December 17, 2003, and concluded that the third surgery was not medically necessary. Based on Dr. Almand's IME, Defendant denied coverage of the third surgery. However, on June 3, 2005, an MWCC administrative judge ruled that the carpectomy was necessary and granted Plaintiff's request for the third surgery. Plaintiff had the surgery on October 4, 2005.

Plaintiff filed the instant action against Defendant on August 31, 2004, alleging that Defendant acted in bad faith in refusing to approve the third surgery. Defendant has now moved for summary judgment, contending that it had an arguable reason for denying coverage. Defendant relies primarily on the IME of Dr. Almand as an arguable reason for denying coverage of the third surgery. Also, Defendants point to Plaintiff's medical records wherein Dr.

4

Geissler on several occasions opined that either the risk of a carpectomy outweighed the benefits or that the procedure was not necessary. Alternatively, Defendant argues that even if there was no legitimate reason to deny coverage, it did not act willfully, maliciously, or in gross or reckless disregard of Plaintiff's rights in denying coverage.

In response, Plaintiff argues that Defendant's failure to obtain Plaintiff's medical records or in any way investigate the proposed third operation prior to the originally scheduled date of August 5, 2003, was a wrongful denial of the procedure. Plaintiff further asserts that there was no legitimate reason at that time to deny approval as Dr. Almand had not examined Plaintiff prior to August 5, 2003. Second, Plaintiff contends Dr. Almand's opinion lacked credibility because (1) he did not know what type of surgery Dr. Geissler had proposed, (2) he regularly conducted IME's for Defendant, and (3) Defendant's counsel at the time, Virden, was also Dr. Almand's personal attorney.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists.

It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Analysis

Under Mississippi law, to succeed on a claim of bad faith refusal of insurance coverage and thereby be entitled to punitive damages, a plaintiff must prove that (1) there was no arguable or legitimate reason to deny coverage and (2) the insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights. Liberty Mutual Ins. Co. v. McKneely, 862 So.2d 530, 533 (Miss. 2003) (citing State Farm Mut. Auto Ins. Co. V. Grimes, 722 So.2d 637, 641 (Miss. 1988)).

If the insurer had a legitimate or arguable reason for deny coverage, then punitive damages are not appropriate. Caldwell v. Alfa Ins. Co., 686 So.2d 1092, 1096 (Miss. 1996). In Caldwell, the Mississippi Supreme Court defined an arguable reason as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to heightened level of an independent tort."

Id.[5] "The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith." McKneely, 862 So.2d at 533.

In the case *sub judice*, Plaintiff presents two arguments as to why Defendant acted in bad faith in not approving the third surgery. Plaintiff first charges that Defendant denied approval without an arguable reason prior to the originally scheduled surgery date of August 5, 2003. Second, Plaintiffs contend that Dr. Almand's opinion did not present a legitimate reason to deny coverage of the surgery.

In arguing that Defendant wrongfully denied its approval of the third surgery prior to August 5, 2003, Plaintiff apparently reasons that Defendant's failure to approve the surgery prior to the scheduled date of the surgery equates to a denial of coverage. However, there is no evidence in the record that Defendant ever

---

[5] "Arguable reason" was also defined in Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell, 466 So.2d 833, 851 (Miss. 1985), as follows:
> An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts. And when we say this, we are in essence articulating in an extra-judicial context our familiar rules regarding what proof is necessary to create a jury question. See, e.g., Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).

denied approval of the third surgery prior to August 5, 2003. Instead, the appropriate inquiry is whether Defendant acted in bad faith in *delaying* its investigating of the proposed third surgery prior to the originally scheduled date of August 5, 2003.

Accordingly, the Court will first consider whether Defendant acted in bad faith by delaying its investigation of the third surgery. Second, the Court will determine whether Defendant's eventual denial of coverage of the third surgery was in bad faith.

**III.A. Whether Defendant's delay in investigating the third surgery was in bad faith**

The Court must first determine whether Defendant acted in bad faith in delaying its investigation of the proposed third surgery before August 5, 2003. After receiving notice of a claim, an insurer has a duty to perform a prompt and adequate investigation of the claim. McKneely, 862 So.2d at 534. The insurer must also make a reasonable effort to obtain medical records pertinent to the claim. Eichenseer v. Reserve Life Ins. Co., 881 F.2d 1355, 1362 (5th Cir. 1989) (applying Mississippi law), *vacated on other grounds*, 499 U.S. 914 (1991). However, as the Mississippi Supreme Court explained in McKneely, "the plaintiff's burden in proving a claim of bad faith refusal goes beyond proving mere negligence in performing the investigation." Id.

In the instant case, Defendant first received notice of the proposed third surgery on July 2, 2003, only thirty-four days

9

before it was originally scheduled on August 5, 2003. Although Defendant did not begin an active investigate of the claim until August 11, 2003, Defendant did ask Plaintiff's counsel on July 9, 2003, to provide relevant medical records and an explanation from Dr. Geissler as to why the surgery was necessary.  Plaintiff obviously did not act on Defendant's request for this information. Other courts have considered a plaintiff's failure to aid an investigation of a claim as a factor weighing against a finding of bad faith. See McKneely, 862 So.2d at 535 ("We note that it would not have been unduly burdensome for [the plaintiff] to ask . . . his own physician[] to provide a clear statement to the insurer indicating the doctor's opinion. . . ."); Dauro v. Allstate Ins. Co., 114 Fed App'x 130, 136 (5th Cir. 2004) (considering that plaintiff "contributed to the delay [] by failing to cooperate with [the insurer's] investigation of the claim" in holding that insurer had an arguable reason for delay).

Further, the only notice of the claim that Defendant received was a letter written by Plaintiff's counsel to Defendant's counsel. Miss. Code Ann. § 71-3-15(1) provides that "no claim for medical or surgical treatment shall be valid and enforceable, as against such employer, unless within twenty (20) days following the first treatment the physician or provider giving such treatment *shall furnish* to the employer, if self-insured, or its carrier, *a preliminary report of such injury and treatment*." (Emphasis added).

According to the requirements of § 71-3-15, it appears that Plaintiff did not properly submitted a valid claim for surgical treatment to Defendant. Thus, whether Defendant even had an obligation to begin an investigation without a report from Dr. Geissler explaining the need for procedure is questionable.

Plaintiff primarily relies on <u>Eichenseer</u> in arguing that Defendant had no arguable reason to delay approval of the third operation. In <u>Eichenseer</u>, the Fifth Circuit upheld the decision of a district court to allow a punitive damage instruction where an insurer waited over four years after a claim was filed to investigate a claim. <u>Eichenseer</u>, 881 F.2d at 1362. The court in <u>Eichenseer</u> concluded that the defendant acted with reckless disregard for the rights of the plaintiff by failing to investigate the claim for such a long period of time. <u>Id</u>. However, there is a vast difference in waiting four years to investigate a claim, as the insurer did in <u>Eichenseer</u>, and waiting only thirty-four days to investigate, as Defendant did in this case.

Accordingly, the Court finds that Defendant's delay in investigating the claim prior to the scheduled surgery date of August 5, 2003, was at worst negligence and certainly did not rise to the level of gross or reckless disregard of Plaintiff's rights.

**III.B. Whether Defendant acted in bad faith in ultimately denying coverage of the third surgery**

11

Plaintiff further argues that Defendant's decision to deny approval of the third surgery based on Dr. Almand's opinion amounted to bad faith. An insurer's reliance on a physician's opinion in denying a claim has generally been a sufficient ground, in and of itself, to constitute an arguable or legitimate reason for denial of coverage. <u>Bankers Life & Casualty Co. v. Crenshaw</u>, 483 So.2d 254, 274 (Miss. 1985); <u>Peel v. American Fidelity Assurance Co.</u>, 680 F.2d 374, 376 (5th Cir. 1982); <u>Horton v. Hartford Life Ins. Co.</u>, 570 F.Supp. 1120, 1124 (N.D. Miss. 1983). Plaintiff however questions the credibility of Dr. Almand's opinion based on the following reasons: 1) Dr. Almand opinion was based on inadequate information as he did not know what kind of operation Dr. Geissler had recommended; 2) Dr. Almand stated that he conducts eight to ten IME's for Defendant each year; and 3) Defendant's attorney, Britt Virden, had previously represented Dr. Almand. Based on these facts, Plaintiff, relying on <u>Crenshaw,</u> urges that a jury should be allowed to consider Dr. Almand's credibility and determine whether Defendant was justified in relying on Dr. Almand's opinion.

In <u>Crenshaw</u>, an insurer relied on the medical opinion of one of its own employees in denying coverage to an insured. <u>Id.</u> Further, the employee-physician in <u>Crenshaw</u>, in forming his opinion, ignored facts in the plaintiff's medical records that were not favorable to the insurer's desired conclusions. <u>Id.</u>

12

Considering the obvious bias of the physician, the Mississippi Supreme Court determined that it was proper to allow a jury to consider whether the disinterested physician's opinion was credible. Id.

The instant case does not present as egregious circumstances as the court faced in Crenshaw. Dr. Almand is not an employee of Defendant. Although he initially stated in his deposition that he performed eight to ten IME's for Defendant per year, he later clarified that he performs eight to ten IME's per year for various insurers. See Exhibit "F" to Defendant's Motion for Summary Judgment, p. 53. Further, the fact Dr. Almand was not aware of the surgery proposed by Dr. Geissler is insignificant. Dr. Almand's report reflects that he based his opinion not only on his examination of Plaintiff but also on a thorough review of her medical history. Exhibit "L" to Defendant's Motion for Summary Judgment. Finally, the fact Dr. Almand has previously been represented by Defendant's counsel in unrelated matters is insufficient to call into doubt his credibility in giving an independent determination of Plaintiff's condition. Therefore, the Court finds that Dr. Almand's independent medical opinion presented Defendant an arguable reason in denying approval of the third surgery.

Notwithstanding the opinion of Dr. Almand, Defendant also had an arguable reason to deny coverage based on Dr. Geissler's past

recommendation that the treatment was not necessary. Particularly, Dr. Geissler's December 17, 2002, written evaluation after the second surgery, wherein he opined that "[n]o further treatment is required or recommended for Ms. Sansome" and that Plaintiff had reached maximum medical improvement, provided Defendant's with a legitimate reason to deny the proposed third surgery.

Plaintiff bear the burden to come forth with genuine issues of material fact regarding whether Defendant had no arguable reason for delaying workers' compensation coverage to J. Jackson. See, Caldwell, 686 So.2d at 1097. Plaintiff has failed in this endeavor. Accordingly, Defendant's Motion for Summary Judgment must be granted.

### III.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Defendant Liberty Mutual Insurance Company [docket entry no. 29] is well taken and is hereby granted. This case is hereby dismissed with prejudice. A Final Judgment will be entered reflecting the final resolution of this matter.

SO ORDERED this the 3rd day of February, 2006.


                                    s/ William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE
blj